# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMES L. HINES,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:16-cv-01996-MHH** |
| | } | |
| **REGIONS BANK f/k/a UNION** | } | |
| **PLANTERS BANK, N.A.,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Before the Court are defendant Regions Bank's motion to dismiss this action

by *pro se* plaintiff James L. Hines and Mr. Hines's motion for entry of default

against Regions. (Docs. 7, 12). Mr. Hines filed this action on September 14, 2016

in the Circuit Court for Madison County, Alabama in response to Regions's efforts

to foreclose on a mortgage on his property in Scottsboro, Alabama. (Doc. 1–1, pp.

3, 6). Mr. Hines filed for bankruptcy under Chapter 7 in October 2013 and has

been in default on his mortgage since December 7, 2014. (Doc. 1–1, p. 5).

Mr. Hines acknowledges that Regions's mortgage on his property survived

his bankruptcy, but he argues that Regions, through its conduct, has lost the right to

accelerate the balance of the mortgage. (Doc. 1–1, p. 6). Mr. Hines filed this suit

because "a non-judicial foreclosure [would] not allow him to assert the defenses he

1

is entitled to." (Doc. 1–1, p. 5). As defenses to foreclosure, Mr. Hines asserts Regions's violation of the Real Estate Settlement Procedures Act (RESPA), estoppel by acquiescence, laches, and unclean hands. (Doc. 1–1, p. 6).

Regions removed this case from state to federal court pursuant to 28 U.S.C. § 1441 because Mr. Hines's RESPA claims arise under federal law. (Doc. 1, p. 3). After removing the case, relying on Rule 12(b)(6), Regions moved the Court to dismiss Mr. Hines's complaint for failure to state a claim on which the Court may grant relief. (Doc. 7). Mr. Hines responded by moving the Court to enter a default against Regions based on his assertion that Regions's response to his state court complaint was untimely. (Doc. 12). For the reasons explained below, the Court will grant in part and deny in part Regions's motion to dismiss this action. The Court also will deny Mr. Hines's motion for entry of default against Regions.

## I. STANDARD OF REVIEW

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss based on Rule 12(b)(6) asks the Court to dismiss a complaint because the plaintiff has not pleaded a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). To resolve Regions's motion to dismiss, the Court must consider whether Mr. Hines has alleged facts that "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts that Mr. Hines alleges must be sufficient for the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At the motion to dismiss stage, the Court "must and do[es] assume that any well-pleaded allegations in the amended complaint are true." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1284 (11th Cir. 2010). Like any other plaintiff, a *pro se* plaintiff must offer factual support for his claim, but "[a] *pro se* pleading is held to a less stringent standard than a pleading drafted by an attorney and is liberally construed." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017) (internal quotations omitted).

## II. DISCUSSION

### a. Mr. Hines's Request for Default Against Regions

With respect to his request for an entry of default against Regions, which Mr. Hines raised in his response to Regions's motion to dismiss, Mr. Hines contends that, after filing this action on September 7, 2016, he served process "on Regions Bank at its address in Birmingham, Alabama" and on Regions's "attorney of record, W.L. Longshore." (Doc. 12, p. 1). Mr. Hines contends that "Regions cannot deny that it received and was aware of the Complaint, yet [Regions] failed to answer the complaint or file a motion to dismiss within the time limit set forth under Rule 12, *Alabama Rules of Civil Procedure* and is in default." (Doc. 12, pp.

1–2). In response, Regions argues that it cannot be in default because Mr. Hines never properly served Regions, and Regions timely removed the case to this Court before Mr. Hines effectively served Regions with process. (Doc. 1, p. 2; Doc. 13, p. 2).

The original state court complaint, which Regions attached to its notice of removal, indicates that Mr. Hines filed this case on September 14, 2016. (Doc. 1–1, pp. 2–3). The Court's review of the docket indicates that Regions's December 13, 2016 removal of the case from state to federal court was the bank's first response to Mr. Hines's complaint. (*See* Doc. 1, p. 2; Doc. 1–1, p. 2; Doc. 13–1, p. 2). Although Regions's response comes well after Mr. Hines filed this case, Regions's delay may result in default only if Mr. Hines properly served the bank; without proper service of process, the Court does not obtain jurisdiction over a party. *See Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served."). The records from the state court proceedings, also attached to Regions's notice of removal, indicate that Mr. Hines attempted to serve Regions on September 14, 2016 by sending a copy of the summons and complaint via certified mail to a post office box. (Doc. 1–1, p. 9). Mr. Hines asserts that he also served Regions with process

by sending the summons and complaint to Regions's counsel in the foreclosure proceedings, Longshore, Buck and Longshore P.C. (Doc. 12, p. 1).

The Alabama Rules of Civil Procedure permit a plaintiff to serve a corporate entity "by serving an officer, a partner (other than a limited partner), a managing or general agent, or any agent authorized by appointment or by law to receive service of process." Ala. R. Civ. P. 4(c)(6).[1] A plaintiff may use certified mail to serve a corporation, but the addressee of that certified mailing must be one of the persons listed in Rule 4(c)(6). *See* Ala. R. Civ. P. 4(h)(2)(B)(i). Even where the plaintiff properly addresses the certified mailing, Alabama's rules state that:

> [s]ervice by certified mail shall be deemed complete and the time for answering shall run from the date of delivery to the named addressee or the addressee's agent *as evidenced by signature on the return receipt.* Within the meaning of this subdivision, "agent" means a person or entity specifically authorized by the addressee to receive the addressee's mail and to deliver that mail to the addressee.

Ala. R. Civ. P. 4(h)(2)(C) (emphasis added).

Mr. Hines's attempts at service do not comport with Alabama's rules. Mr. Hines addressed his summons and complaint to a P.O. Box, not to an officer, general agent, or authorized agent of Regions. (*See* Doc. 1–1, p. 9). Therefore,

---

[1] The Federal Rules of Civil Procedure contain a similar provision. *See* Fed. R. Civ. P. 4(h)(1)(B). (A plaintiff may effect service on a corporation "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.").

this attempt at service was inadequate.  *See Ex Parte LERETA, LLC*, 226 So. 3d 140, 145 (Ala. 2016)).

Although Mr. Hines's attempt to serve process on Regions's through the bank's counsel in the foreclosure proceedings may be closer, it too misses the mark.

> Neither the Alabama Code nor our Rules of Civil Procedure authorize process service on the defendant's attorney unless performed in compliance with Rule 4(h), *Singleton v. Allen*, 431 So. 2d 547 (Ala. Civ. App. 1983), or unless there is credible evidence of the appointment of the attorney as agent for purposes of service of process, or that he is authorized by law in accordance with Rule 4(c)(1).

*Kingvision Pay-Per-View, Ltd. v. Ayers*, 886 So. 2d 45, 52 (Ala. 2003) (quoting *Colvin v. Colvin,* 628 So. 2d 802, 803 (Ala. Civ. App. 1993)).  Longshore, Buck and Longshore's representation of Regions in the foreclosure proceeding does not make that firm Region's general agent for service of process.  *See LVNV Funding, LLC v. Boyles*, 70 So. 3d 1221, 1228 (Ala. Civ. App. 2009) (holding that a party's attorney did not, by virtue of its representation alone, become the party's agent for service of process.).  Mr. Hines's has not pointed to evidence beyond Longshore's representation in the foreclosure proceeding from which the Court could conclude that Longshore was Regions's authorized agent for service of process.  Therefore, this effort to serve process was inadequate.  In addition, neither of Mr. Hines's

attempts at service resulted in the return of a signed receipt as contemplated by Rule 4(h)(2)(C). (*See* Doc. 1–1, p. 2; Doc 13–1, p. 2; Ala. R. Civ. P. 4(h)(2)(C)).

That Regions became aware of Mr. Hines's case does not render the manner in which Mr. Hines served Regions with process valid under the governing law. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("A defendant's actual notice is not sufficient to cure defectively executed service."). Without proper service of process, Regions was not obligated to answer the complaint or otherwise defend the case, and because Regions had no such obligation, Mr. Hines is not entitled to an entry of default. Therefore, the Court denies Mr. Hines's motion for entry of default against Regions.

### b. Mr. Hines's RESPA Claims

Mr. Hines argues that Regions may not accelerate the balance of his mortgage because Regions has violated the Real Estate Settlement Procedures Act. Mr. Hines bases his RESPA claims on sections 1024.39 and 1024.40 of Regulation X, a regulation which implements RESPA and which the Consumer Financial Protection Bureau amended in 2013. *Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Reglation X),* 78 Fed. Reg. 10696 (Feb. 14, 2013).

In support of his RESPA claims, Mr. Hines alleges that "Regions Bank personnel have consistently ignored Plaintiff's correspondence and have failed to

abide by the Real Estate and Settlement Act [sic] regarding early intervention and personal contact." (Doc. 1–1, p. 5). Mr. Hines alleges that he has attempted to contact Regions regarding his delinquency on several occasions including by certified mail without receiving a response. (Doc. 12, p. 3). Mr. Hines also alleges that he has offered to make a lump-sum payment towards his mortgage debt and to resume payment "at the same monthly installments that were on the original loan." (Doc. 1–1, p. 6). Mr. Hines claims that he and his wife suffered "embarrassment, mental anguish, pain and suffering caused by the unconscionable practice of Regions Bank and it's [sic] personnel for it's [sic] malicious and ruthless way it has handled this delinquency." (Doc. 1–1, p. 7).

Regions responds that because Mr. Hines was a debtor in bankruptcy when his mortgage went into default, RESPA restricted Regions from making contact with Mr. Hines in the manner that Mr. Hines claims RESPA requires.[2] Regions also contends that Mr. Hines failed to adequately plead an injury caused by the alleged RESPA violations. Additionally, Regions argues that Mr. Hines's RESPA allegations fail to state a claim because the regulatory sections to which he cites do not provide a private right of action.

---

[2] Regions also argues that Mr. Hines has abandoned his RESPA claims. (Doc. 13, p. 5). Mr. Hines, however, consistently argues that "[t]here was nothing to prohibit Regions from communicating with Plaintiff after the bankruptcy discharge." (Doc. 12, p. 2). Because Mr. Hines continues to reiterate the primary allegation underlying his RESPA claims, the Court does not agree that Mr. Hines has abandoned his RESPA claims. As stated, the pleading standards for *pro se* litigants are not as strict as those for attorneys.

Section 1024.39 of Regulation X requires mortgage servicers to "establish or make good faith efforts to establish live contact with a delinquent borrower no later than the 36th day of a borrower's delinquency and again no later than 36 days after each payment due date so long as the borrower remains delinquent." 12 C.F.R. § 1024.39(a). Servicers also must "inform the borrower about the availability of loss mitigation options, if appropriate." *Id.* Section 1024.39 sets some parameters for the servicer's contact with the borrower by prescribing the timing and contents of the notice that the servicer must send when the borrower is delinquent. 12 C.F.R. § 1024.39(b).

When the borrower is in bankruptcy, § 1024.39 partially exempts mortgage servicers from the foregoing requirements. The servicer is relieved of paragraph (a)'s obligation to establish live contact with the borrower, and the servicer is exempt from paragraph (b)'s obligation to provide statutory notice to the borrower but only if loss mitigation options are not available to the borrower or the borrower has provided notification pursuant to the Fair Debt Collection Practices Act. 12 C.F.R. §§ 1024.39(c)(1)(i) & (ii). If, however, those exemptions do not apply, then the servicer must provide the notice required by paragraph (b) to a borrower in bankruptcy "not later than the 45th day of the borrower's delinquency." 12 C.F.R. § 1024.39(c)(iii)(A).[3]

---

[3] 12 C.F.R. §§ 1024.39(c)(1)(i)–(iii) read in full as follows:

Section 1024.40 requires the servicer to implement policies "reasonably designed to achieve" certain objectives including providing timely responses to inquiries from a delinquent borrower and providing a delinquent borrower with personnel to address the borrower's inquiries and loss mitigation options. 12 C.F.R. §§ 1024.40(a)(1)–(3).

---

(c) Borrowers in bankruptcy—

(1) Partial exemption. While any borrower on a mortgage loan is a debtor in bankruptcy under title 11 of the United States Code, a servicer, with regard to that mortgage loan:

(i) Is exempt from the requirements of paragraph (a) of this section;

(ii) Is exempt from the requirements of paragraph (b) of this section if no loss mitigation option is available, or if any borrower on the mortgage loan has provided a notification pursuant to the Fair Debt Collection Practices Act (FDCPA) section 805(c) (15 U.S.C. 1692c(c)) with respect to that mortgage loan as referenced in paragraph (d) of this section; and

(iii) If the conditions of paragraph (c)(1)(ii) of this section are not met, must comply with the requirements of paragraph (b) of this section, as modified by this paragraph (c)(1)(iii):

(A) If a borrower is delinquent when the borrower becomes a debtor in bankruptcy, a servicer must provide the written notice required by paragraph (b) of this section not later than the 45th day after the borrower files a bankruptcy petition under title 11 of the United States Code. If the borrower is not delinquent when the borrower files a bankruptcy petition, but subsequently becomes delinquent while a debtor in bankruptcy, the servicer must provide the written notice not later than the 45th day of the borrower's delinquency. A servicer must comply with these timing requirements regardless of whether the servicer provided the written notice in the preceding 180–day period.

(B) The written notice required by paragraph (b) of this section may not contain a request for payment.

(C) A servicer is not required to provide the written notice required by paragraph (b) of this section more than once during a single bankruptcy case.

When read in the light most favorable to Mr. Hines, the complaint contains sufficient factual matter to state a plausible claim for violation of § 1024.39. Mr. Hines alleges that Regions did not communicate with him about his mortgage delinquency or his desire to avail himself of loss mitigation options. (Doc. 1–1, p. 5). As the foregoing review of § 1024.39 indicates, Mr. Hines's status as a debtor in bankruptcy did not absolve Regions of its duties to communicate with Mr. Hines; it only altered those duties. At the pleadings stage, the Court cannot resolve factual questions regarding those continued duties, such as whether Mr. Hines was eligible for loss mitigation or whether Regions was still obligated to comply with 1024.39(b)'s written notice requirement. The pleadings indicate that Mr. Hines's mortgage became delinquent more than a year after he filed for bankruptcy. (Doc. 1–1, p. 5). This fact suggests that Mr. Hines made some payments towards his mortgage after filing for bankruptcy. If this is so, then Regions remained obligated to communicate with Mr. Hines regarding his delinquency through statutory notices even though the bankruptcy proceeding had relieved Mr. Hines of his personal obligation on the mortgage. *See* 12 C.F.R. § 1024.39(c)(2)(ii). Thus, Mr. Hines's complaint raises questions of Regions's compliance with Regulation X that the Court cannot resolve at this stage of the litigation.

To state a claim for relief, Mr. Hines also must allege that Regions's violation of § 1024.39 caused him injury. *See Frazile v. EMC Mortg. Corp.*, 382

Fed. Appx. 833, 836 (11th Cir. 2010). Mr. Hines alleges that Regions's RESPA violation – the bank's failure to respond to his questions about his delinquency – caused him emotional damage in the form of "embarrassment, mental anguish, pain and suffering." (Doc. 1–1, p. 7). Regions argues that any such distress was the result of Mr. Hines's failure to pay his mortgage, not the result of Regions's action or inaction. Both parties present facially plausibly theories of what caused Mr. Hines's alleged mental suffering, but causation is a factual question which ordinarily is proper to address at the summary judgment stage. *Cf. Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 274 (D. Conn. 2017) (holding that the causation question between plaintiffs' psychological injury and defendants' RESPA violations could be resolved only after the parties had adduced relevant evidence). To resolve the motion to dismiss, it is enough that Mr. Hines alleges a plausible connection between his injury and Regions's alleged RESPA violation.

Mr. Hines, however, has not alleged facts to support his claim that Regions's violated § 1024.40 because Mr. Hines's allegations are limited to how Regions handled *his* mortgage delinquency. (Doc. 1–1, p. 5). Mr. Hines does not allege that Regions failed to implement policies reasonably designed to achieve that section's objectives, only that Regions did not achieve those objectives in handling his mortgage delinquency. Therefore, Mr. Hines has not adequately pleaded his claim for violation of section 1024.40.

Regions argues that, regardless of the sufficiency of Mr. Hines's factual allegations, he cannot bring an action based on the cited sections of Regulation X because neither section provides a private right of action. Although Regions may be correct with respect to Mr. Hines's claim under § 1024.40, the Court is not persuaded that § 1024.39 does not support a private right of action.

The Eleventh Circuit has not definitively answered the question of whether either section 1024.39 or 1024.40 includes a private right of action. *See Cilien v. U.S. Bank Nat'l Ass'n*, 687 Fed. Appx. 789, 792 n.2 (11th Cir. 2017) (observing that neither section expressly provides a private right of action but first evaluating the sufficiency of the plaintiff's factual allegations). Still, the Consumer Financial Protection Bureau's 2013 amendment of Regulation X indicates that a private action exists under section 1024.39. The Bureau's official commentary to its Regulation X amendments divides the amendments' purposes into nine discreet areas. *See Mortgage Servicing Rules*, 78 Fed. Reg. at 10696–97. The Bureau expressly notes that no private right of action exists in two of these areas: (1) general servicing policies and procedures as well as (2) policies and procedures relating to continuity of contact with delinquent borrowers. *Mortgage Servicing Rules*, 78 Fed. Reg. at 10697–98. This indicates that Mr. Hines does not have a private right of action under § 1024.40 because § 1024.40 concerns the mortgage servicer's general policies and not the borrower's rights.

However, the Bureau's decision to expressly preclude a private right of action only for claims of inadequate servicer policies implies that a private right of action exists in Regulation X's other areas of concern. Among these are the servicer's obligation "to establish live contact with borrowers by the 36th day of their delinquency," to "inform such borrowers, where appropriate, that loss mitigation options may be available," and to "provide a borrower a written notice with information about loss mitigation options;" the same obligations covered by section 1024.39. *Mortgage Servicing Rules*, 78 Fed. Reg. at 10698. This implication arises from the principle of statutory interpretation that when specific language is used in one provision but is omitted in another provision of the same statute or regulation, the Court presumes that the omission is purposeful and indicates an intended difference in the treatment of the those sections. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452 (2002); *Cremeen v. City of Montgomery*, 602 F.3d 1224, 1227 (11th Cir. 2010) (holding that courts apply the canons of construction used to interpret statutes to interpret regulations).

The implication that a private right of action exists for a servicer's violation of certain RESPA obligations would be of no importance if the underlying statute provided no private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress

has not."). Here, however, § 2605(f) of RESPA provides a private right of action against a servicer that "fails to comply with any provision of this section." 12 U.S.C. § 2605(f). Within § 2605 is the requirement that "[a] servicer of a federally related mortgage shall not . . . fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E). Mr. Hines alleges that Regions failed to comply with such a regulatory obligation. Therefore, the Court denies Regions's motion with respect to Mr. Hines's RESPA claims under § 1024.39.

### c. Equitable Claims

Mr. Hines raises several equitable defenses to Regions's effort to foreclose on his property: equitable estoppel, laches, and unclean hands. The common thread running through Mr. Hines's equitable arguments is his allegation that Regions's "unreasonable delay" in exercising its foreclosure right makes any further attempt to foreclose on the property inequitable. (Doc. 1 – 1, p. 7).

### i.    Equitable Estoppel

Mr. Hines argues that Regions is estopped from asserting its foreclosure right because Regions waived its right to pursue this remedy through its "excessive, unjustified delay in asserting its rights," a delay which Mr. Hines claims implied Regions's abandonment of its rights. (Doc, 1–1, pp. 6–7).

To establish the essential elements of equitable estoppel, [the proponent] must show the following:

(1) That '[t]he person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on;'

(2) That 'the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon [the] communication;' and

(3) That 'the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct.'

*Lambert v. Mail Handlers Benefit Plan*, 682 So. 2d 61, 64 (Ala. 1996) (quoting

*Gen. Elec. Credit Corp. v. Strickland Div. of Rebel Lumber Co.*, 437 So. 2d 1240,

1243 (Ala. 1983)).  Mr. Hines does not allege that Regions made misleading

statements.  Rather, Mr. Hines appears to allege that Regions's failure to foreclose

for thirty one months after the mortgage became delinquent was conduct or silence

that communicated Regions's intent not to invoke its foreclosure right at any point

in the future.  The Court is not persuaded.

First, it is not clear that, by forbearing from immediately foreclosing,

Regions communicated anything to Mr. Hines that the bank intended him to act on.

Second, Mr. Hines was aware of the mortgage agreement that he signed, and that

agreement states in relevant part that "Grantor understands Lender will not give up

any of Lender's rights under this mortgage unless Lender does so in writing.  The

fact that Lender delays or omits to exercise any right will not mean that Lender has

given up that right." (Doc. 7–2, p. 6). [4]  In light of this language, Mr. Hines knew or should have known that Regions's inaction, standing alone, did not constitute a waiver of the bank's rights.  Finally, Mr. Hines does not explain how he changed his course of action in reliance on Regions's conduct such that he will be unfairly prejudiced if Regions is now permitted to foreclose.  Therefore, the Court grants Regions's motion with respect to Mr. Hines claim of equitable estoppel.

### ii.    Laches

Second, Mr. Hines argues that Regions is barred by the doctrine of laches from foreclosing on the mortgage.  Alabama law defines laches as a "neglect to assert a right or a claim that, taken together with a lapse of time and other circumstances causing disadvantage or prejudice to the adverse party, operates as a bar." *Ala. Bd. of Exam'rs in Psychology v. Hamilton*, 150 So. 3d 1085, 1092 (Ala. Civ. App. 2013) (quoting *Ex Parte Grubbs*, 542 So. 2d 927, 928–29 (Ala. 1989)). "[T]he person asserting the defense of laches [must] show (1) that the claimant delayed in asserting his or her right, (2) that the delay was inexcusable, and (3) that the delay caused the person asserting the defense undue prejudice." *L.B. Whitfield, III Family LLC v. Whitfield*, 150 So. 3d 171, 180 (Ala. 2014).

---

[4] The Court is permitted to consider the mortgage agreement attached to Regions's motion because the document is central to Mr. Hines's claims, and the authenticity of the document is not disputed. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

The Alabama Supreme Court has held that the applicability of laches depends on more than the passage of time. *See, e.g.*, *Delaney's, Inc. v. Pritchard*, 480 So. 2d 1204, 1206–07 (Ala. 1985). "So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law." *L.B. Whitfield*, 150 So. 3d at 181 (internal quotations omitted). Consequently, Mr. Hines must plead facts indicating "that [Regions's] delay has caused such prejudice or disadvantage to [him] that permitting the proceedings to continue would be fundamentally unfair." *Ala. Bd. of Exam'rs in Psychology*, 150 So. 3d at 1092. The Court may find the requisite unfairness where the delay has caused the "unavailability of witnesses, changed personnel, and the loss of pertinent records." *Hamilton*, 150 So. 3d at 1092. The Court also may find sufficient unfairness where there has been "some change in the condition or relation of the property, or the parties during the delay." *L.B. Whitfield*, 150 So. 3d at 181 (internal quotations omitted).

Mr. Hines does not allege that Regions's delay caused changes to warrant the conclusion that continuing with these proceedings would be fundamentally unfair. The parties' respective interests in the property at issue appear to be the same, and the records pertaining to the parties' dispute are available. Therefore, the Court grants Regions's motion with respect to Mr. Hines's laches theory.

### iii. Unclean Hands

Mr. Hines's final equitable theory is that Regions's wrongful conduct precludes the bank from exercising its contractual rights under the doctrine of "unclean hands." Mr. Hines grounds this claim in both Regions's delay and Regions's alleged violation of RESPA. (Doc. 1–1, p. 7). "The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when that party's own wrongful conduct renders the assertion of such legal rights 'contrary to equity and good conscience.'" *Ala. Power Co. v. Keller*, 2017 WL 5017388, at *12 (Ala. Civ. App. Nov. 3, 2017) (quoting *Draughon v. Gen. Fin. Credit Corp.*, 362 So. 2d 880, 884 (Ala. 1978)). "The application of the clean hands doctrine is a matter within the sound discretion of the trial court." *Bekken*, 227 So. 3d at 1217 (quoting *J & M Bail Bonding Co. v. Hayes*, 748 So. 2d 198, 199 (Ala. 1999)).

Although Regions's delay gives Mr. Hines no more traction here than in his other equitable claims, Regions's alleged RESPA violation is a different matter. Courts in other states have recognized that a mortgage servicer's failure to comply with federal regulations governing mortgages can be asserted as a viable equitable defense to foreclosure. *See, e.g.*, *Wells Fargo Home Mortg., Inc. v. Neal*, 922 A.2d 538, 552–53 (Md. 2007) (holding that "if [the] contentions regarding Wells Fargo's failure to comply with the loss mitigation directives are proven to the

satisfaction of the trial court, such a failure may constitute improper and/or inequitable conduct, depending on the proven circumstances.").

The Alabama Court of Civil Appeals has found that a borrower may assert a servicer's regulatory non-compliance as a defense, at least in a pre-foreclosure judicial proceeding such as Mr. Hines's action. *See, e.g.*, *Campbell v. Bank of America, N.A.*, 141 So. 3d 492, 496 (Ala. Civ. App. 2012); *Coleman v. BAC Servicing*, 104 So. 3d 195, 206 (Ala. Civ. App. 2012). The mortgage agreement states that it "will be governed by and interpreted in accordance with federal law." (Doc. 7–2, p. 6). Because the mortgage agreement is subject to RESPA, and because Mr. Hines alleges that Regions's handling of his mortgage violated RESPA, the Court concludes that Regions's right to foreclosure on the mortgage is sufficiently related to Regions's alleged inequitable conduct.

Finally, Regions contends that even if Mr. Hines has adequately pleaded his defense of unclean hands, that doctrine prevents him from asserting the defense because Mr. Hines has not paid Regions the amount he owes on the mortgage. (Doc. 7, pp. 14–15). Although certain Alabama cases hold that the proponent of an equitable defense to foreclosure must offer to pay the amount that the Court determines is owed, *see Marsh v. Wayland*, 96 So. 2d 805, 808 (Ala. 1957), that doctrine does not bar Mr. Hines's equitable claim at the pleading stage.

First, the Court cannot yet determine how much Mr. Hines owes on his mortgage; neither party has provided a figure or evidence to support a figure. Second, Mr. Hines has offered to pay a lump sum of $15,000 towards his debt and to resume his payments "at the same monthly installments that were on the original loan." (Doc. 1–1, p. 7). Although the Court assumes that this represents less than the amount Mr. Hines owes, it is, nonetheless, an offer to do equity especially because the flexibility of equitable remedies should allow for consideration of Mr. Hines's ability to "do equity" in the form of payments. Finally, even those Alabama cases that require the borrower to do equity do not require the proponent to pay that sum before pleading the equitable defense. *See Marsh*, 96 So. 2d at 808. Therefore, Mr. Hines may proceed with his "unclean hands" defense, and the Court denies Regions's motion with respect to this equitable theory.

## IV. CONCLUSION

For the reasons stated above, the Court grants Regions's motion in part and dismisses Mr. Hines's claim for violation 12 C.F.R. 1024.40 and his effort to avoid foreclosure under the principles of equitable estoppel and laches. The Court denies Regions's motion with respect to Mr. Hines's claims for violation of 12 C.F.R. 1024.39 and Mr. Hines's equitable defense of unclean hands. Finally, the Court denies Mr. Hines's motion for an entry of default against Regions.

The Court lifts the stay in this action and asks the parties to please confer and file a Rule 26(f) report **within 14 days** of entry of this order.

The Court asks the Clerk to please mail a copy of this memorandum opinion to Mr. Hines at his address on record.

**DONE** and **ORDERED** this February 15, 2018.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE